```
              UNITED STATES DISTRICT COURT
                DISTRICT OF CONNECTICUT

DELISA MCLELLAN,                      :
                                      :
      Plaintiff,                      :
                                      :
v.                                    :    CASE NO.3:12CV1657(DFM)
                                      :
MICHAEL ASTRUE,                       :
COMMISSIONER OF SOCIAL SECURITY,      :
                                      :
      Defendant.                      :
```

RULING ON PENDING MOTIONS

Plaintiff, Delisa McLellan, seeks judicial review of a partially favorable decision by an Administrative Law Judge ("ALJ") granting plaintiff's application for social security income ("SSI") but denying her application for disability insurance benefits ("DIB").[1] (R. 10-20.) Currently pending are

---

[1] Plaintiff filed applications for DIB and social security income ("SSI") on February 13, 2009, alleging a disability onset date of November 1, 2003. (R. 14.) The ALJ found that plaintiff became disabled on October 1, 2010, and that her date last insured for DIB was December 31, 2008. The ALJ approved plaintiff's application for SSI, but denied her application for DIB because she became disabled after her date last insured, making her ineligible for DIB. See 42 U.S.C. §§ 423(a)(1)(A), (c)(1).

The ALJ found at step one that plaintiff had no substantial gainful employment since her alleged onset date. (R. 17.) At step two, the ALJ found that plaintiff has the following severe impairments: cervical degenerative disc disease (with radiculopathy); lumbar degenerative disc disease (with radiculopathy); and asthma. (R. 17.) He found at step three that plaintiff's conditions did not meet or medically equal a listed impairment. (R. 18.) He determined that prior to October 1, 2010, the date he found to be the onset of plaintiff's disability, she retained the residual functional capacity ("RFC") to perform light work, except that she was limited to

plaintiff's motion to reverse the decision of the Commissioner of Social Security ("Commissioner") (doc. #21) and defendant's motion to affirm the decision of the Commissioner. (Doc. #27.) On July 15, 2016, pursuant to the court's order, counsel filed a joint stipulation of facts and medical chronology, which I incorporate by reference. (Doc. #39.)  I heard oral argument on July 28, 2016.  For the following reasons, plaintiff's motion is DENIED and defendant's motion is GRANTED.[2]

---

occasional bending, stooping, twisting, squatting, kneeling, crawling, climbing, and balancing and had to work in an environment free from dust, fumes, gases, odors, humidity, wetness, temperature extremes, and poor ventilation. (R. 18.) At step four, the ALJ determined that plaintiff is unable to perform her past relevant work. (R. 24.)  At step five, considering plaintiff's age, education, work experience, and RFC, the ALJ found that jobs exist in significant numbers in the national economy that plaintiff could perform. (R. 24.)  He thus concluded that plaintiff was not disabled prior to October 1, 2010. (R. 25.)
    The ALJ went on to find that as of October 1, 2010, plaintiff had the additional severe impairment of right shoulder bursitis and that her RFC decreased from light to sedentary work, with the additional limitation of not using her right dominant upper extremity for lifting, grasping, reaching, handling, fingering, or pushing/pulling. (R. 23.)  The ALJ found that this reduced RFC precluded plaintiff's performance of her past relevant work or any other work. (R. 25.)  He therefore found plaintiff disabled from October 1, 2010 through the date of his decision. (R. 25.)  The ALJ issued a partially favorable ruling, awarding plaintiff SSI, but finding her ineligible for DIB because she did not become disabled until after her date last insured of December 31, 2008.  Plaintiff appealed the ALJ's decision to the Appeals Council, which denied her request for review on September 27, 2012. (R. 6.)
    [2]This is not a recommended ruling.  On July 12, 2016, the parties consented to the jurisdiction of a magistrate judge. (Doc. #38.)  See 28 U.S.C. § 636(c); Fed.R.Civ.P. 73(b).

I.   Legal Standard

The standards for determining an individual's entitlement to DIB, the Commissioner's five-step framework for evaluating disability claims, and the district court's review of the final decision of the Commissioner are well-settled.  I am following those standards, but do not repeat them here.

II.   Discussion

Plaintiff makes five arguments.  She contends that the ALJ erred by (a) failing to give controlling weight to the opinion of her treating physician, Dr. Vincent Carlesi; (b) failing to meet his burden of proof that plaintiff retained the RFC to perform light work until October 1, 2010; (c) failing to apply the requirements of Social Security Ruling ("SSR") 83-20; (d) failing to disclose new evidence obtained after the hearing to either plaintiff or her attorney; and (e) failing to properly explain his credibility determination.

A. Treating Physician Rule

Plaintiff first argues that the ALJ erred by rejecting the opinion of her treating physician, Dr. Carlesi.

Under the treating physician rule, a treating physician's opinion is accorded controlling weight when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record."  20 C.F.R. §

404.1527(c)(2); see Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004). The ALJ must "give good reasons" for the weight accorded to the treating physician's opinion. See Halloran, 362 F.3d at 32; see also 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.").

Plaintiff contends that the ALJ erred by rejecting Dr. Carlesi's "multiple statements of disability and descriptions of his examinations that showed persistent severe low back and leg pain, cervical spine pain, and antalgic gait," and by "ignor[ing] all of Dr. Carlesi's statements of disability between January 24, 2005 and May 16, 2007." (Doc. #21-1, Pl. Memo of Law, pp. 19-20.) Plaintiff also argues that the ALJ was required, but failed to consider the factors enumerated in 20 C.F.R. § 404.1527(c)(2)[3] when rejecting Dr. Carlesi's opinion.

The ALJ gave "significant weight" to Dr. Carlesi's opinion, with the exception of his "notations" that plaintiff is "disabled" or "totally disabled," to which he assigned no special significance. He explained:

---

[3]If controlling weight is not given to a treating source's opinion, the ALJ considers certain factors in determining the weight to be assigned. Those factors include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the opinion's consistency with the record; (5) the treating physician's specialization, if any; and (6) other factors brought to the ALJ's attention. 20 C.F.R. § 404.1527(c)(2).

> Dr. Carlesi's opinion is consistent with the record as a whole . . . and is given significant weight. The undersigned has considered notations in Dr. Carlesi's records that, at first blush, appear to express an opinion that the claimant is disabled . . . . However, these notations are in the history and are based upon self-report not medical evidence. Moreover, to the extent that Dr. Carlesi opined that the claimant is disabled, that opinion is an assessment of the claimant's disability which is an issue reserved to the Commissioner . . . and is not entitled to any special significance.

(R. 21.)

The ALJ correctly concluded that Dr. Carlesi's notations that plaintiff is disabled are not medical opinions.[4] See Westcott v. Colvin, No. 12-CV-4183 (FB), 2013 WL 5465609, at *3 (E.D.N.Y. Oct. 1, 2013) ("[S]tatement[s] by a medical source that you are disabled or unable to work are not medical opinions.") (citation and internal quotation marks omitted). Moreover, even if Dr. Carlesi had intended these notations to represent his opinion that plaintiff is disabled,[5] "[o]pinions on

---

[4] Plaintiff contends that Dr. Carlesi's statements that plaintiff is "disabled" or "totally disabled" are more than mere notations, but rather "were his descriptions of [plaintiff]'s condition based on his examination at the time he examined her." (Pl. Reply Br., Doc. #30, p. 3.) These notations, however, appear only in the employment and social history sections on several "Patient Progress Note" forms and appear to represent plaintiff's self-reported employment status. (R. 207, 213, 215, 216, 217, 218, 220, 221, 222, 223, 224, 225, 226, 227, 228, 229, 230, 231, 235, 236, 237, 238, 241, 243, 245, 247, 249, 251.)

[5] In a follow-up note from November 22, 2004, Dr. Carlesi's narrative seems to suggest hesitation in opining about plaintiff's disability. See R. 242-44 ("I did discuss her case with her nurse case manager, Susette Sawyer, RN. As I mentioned to Ms. Sawyer, I felt that the patient did have a certain work capacity, although I felt that a functional capacity examination

5

some issues, such as . . . . whether [plaintiff] meet[s] the statutory definition of disability," are "issues reserved to the Commissioner." 20 C.F.R. § 404.1527(d). "No deference is owed to a physician's statement that a claimant is 'disabled,' because that determination is a legal conclusion, not a medical determination, reserved for the ALJ, the Commissioner, and the courts." Serrano v. Astrue, No. 3:10-CV-468 (JCH), 2011 WL 1399465, at *10 (D. Conn. Apr. 12, 2011).

Because Dr. Carlesi's notations that plaintiff is "disabled" or "totally disabled" concern an issue reserved to the Commissioner and are not medical opinions, the ALJ properly determined that they are not entitled to any special significance, nor was he required to apply the factors set forth in 20 C.F.R. § 404.1527(c) when reaching his decision. See, e.g., Earl-Buck v. Barnhart, 414 F. Supp. 2d 288, 293 (W.D.N.Y. 2006) ("Because the opinions of [plaintiff's treating and examining orthopedic surgeons] that plaintiff was 'totally disabled' are not 'medical opinions' under 20 C.F.R. § 404.1527(a)(2), the ALJ was not required to accord them any significant weight under the treating physician's rule. Nor was

---

and assessment should be done prior to any final assessments on her disability ratings . . . . [A] functional capacity examination and assessment should be performed to see if she can perform the activities of her job. If she is unable to perform the activities of her job, she should then be vocationally trained for a new position.").

the ALJ required to state reasons on the record for not doing so.").

B. RFC Determination

Plaintiff next argues that the ALJ had no basis for his RFC determination. The initial burden of establishing disability is on the claimant. See 42 U.S.C. §§ 423(d)(5), 1382c(a)(3)(G). "Once the claimant demonstrates that [she] is incapable of performing [her] past work, however, the burden shifts to the Commissioner to show that the claimant has the residual functional capacity to perform other substantial gainful activity in the national economy." Ruiz v. Apfel, 98 F. Supp. 2d 200, 206 (D. Conn. 1999). Plaintiff argues that the ALJ's RFC determination--that plaintiff could perform light work until October 1, 2010--is not supported by substantial evidence and that he erred by relying on the opinions of the non-examining state agency physicians over the opinions of her treating and examining physicians.

Three non-examining state-agency physicians opined that plaintiff was capable of performing light work.[6] (R. 55-58, 399-

---

[6]On September 12, 2007, Dr. Joseph Connelly completed a physical RFC assessment in which he opined that plaintiff occasionally could lift 20 pounds; frequently lift 10 pounds; stand and/or walk for a total of about 6 hours in an 8-hour workday; sit for about 6 hours in an 8-hour workday; occasionally climb ramps/stairs, balance, stoop, kneel, crouch, or crawl; never climb ladders/ropes/scaffolds; and must avoid concentrated exposure to fumes, odors, dusts, gases, and poor

7

406, 654-61.)  The ALJ assigned these opinions "some weight," noting that "[a]lthough those physicians were non-examining, and therefore their opinions do not as a general matter deserve as much weight as those of examining or treating physicians, those opinions do deserve some weight." (R. 22.)  Contrary to plaintiff's assertion, the ALJ's RFC determination was not based solely on these non-examining physicians' opinions.  When reaching his RFC determination, the ALJ discussed the evidence of record (including plaintiff's own statements) over four single-spaced pages.  He explained his ultimate conclusion as follows:

> [T]he record as a whole supports the conclusion that the claimant was able to perform light exertional work with a restriction to occasional postural activities. On the whole, the treatment records do indicate complaints of back pain, which would interfere with the claimant's ability to work . . . . However, read in their entirety, the medical records do not document clear evidence of ongoing and significant signs/symptoms, which would support a restriction beyond the RFC assigned.  For example, despite positive results of straight leg raise testing and restricted range of motion of the spine at the consultative examination, the claimant had no neurological deficits . . . .  Additionally, despite complaints of disabling lower extremity pain and her testimony that she has required a cane to ambulate since 2005, the evidence shows that the claimant does not require an assistive device to ambulate.

(R. 22.)

---

ventilation. (R. 654-61.)  On June 9, 2009, Dr. Firooz Golkar made a substantially similar assessment. (R. 55-58.)  Dr. Arthur Waldman also completed a physical RFC assessment and identified the same limitations. (R. 399-406.)

"[T]he court must decide whether the [RFC] determination is supported by substantial evidence . . . . Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a 'mere scintilla.' . . . The substantial evidence rule also applies to inferences and conclusions that are drawn from findings of fact . . . . The court may not decide facts, reweigh evidence or substitute its judgment for that of the Commissioner." Gonzalez v. Apfel, 23 F. Supp. 2d 179, 189 (D. Conn. 1998) (citations omitted). The court will not second-guess the ALJ's decision where, as here, he identified the reasons for his RFC determination and supported his decision with substantial evidence. Falcon v. Colvin, No. 5:12-CV-1164 (FJS), 2014 WL 1312362, at *4 (N.D.N.Y. Mar. 31, 2014) ("So long as the ALJ properly exercises his discretion, the court must limit its review to whether substantial evidence supports the ALJ's decision; the court may not second-guess the ALJ's balancing of the evidence."); Marquez v. Colvin, No. 12 CIV. 6819 (PKC), 2013 WL 5568718, at *14 (S.D.N.Y. Oct. 9, 2013) (where "the ALJ conforms with applicable law and SSA regulations, and the ALJ's decision is supported by substantial evidence, this court will not second-guess his judgment."). Here, the ALJ provided a detailed explanation of his RFC determination and supported his decision with substantial evidence. There is no error.

C. SSR 83-20

Plaintiff next argues that because this is a case where the ALJ had to infer plaintiff's onset date from the evidence of record, SSR 83-20 required the ALJ to employ a medical advisor to determine the onset date. Plaintiff submits that a new hearing is required at which orthopedic and neurosurgical medical advisors must review the record and guide the ALJ's inference.

SSR 83-20 provides:

> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred. If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

SSR 83-20, 1983 WL 31249, at *3 (1983).

"Where . . . the record is ambiguous regarding the onset date of a claimant's disability, the ALJ must call on a medical advisor to assist in inferring a date." Larkin v. Comm'r of Soc. Sec., No. 2:10-CV-291, 2011 WL 4499296, at *6 (D. Vt. Sept. 27, 2011). "While SSR 83-20 does not mandate that a medical advisor be called in every case, courts have construed this step

10

to be essential when the record is ambiguous regarding onset date." Parmenter v. Astrue, No. 08-CV-1132, 2010 WL 2884866, at *5 (N.D.N.Y. Apr. 23, 2010) (citation and internal quotation marks omitted); see, e.g., Telfair v. Astrue, No. 04CIV. 2122 (JGK), 2007 WL 1522616, at *7 (S.D.N.Y. May 15, 2007) (holding that "[b]ecause the onset date needed to be inferred and the medical evidence was unclear," ALJ erred by not calling upon services of medical advisor).

Here, the record was not ambiguous as to plaintiff's onset date and thus, the ALJ was not required to call upon the services of a medical advisor. The ALJ found that plaintiff became disabled in October 2010. This was not an arbitrary date. The ALJ discussed the specific evidence that supports his decision as follows:

> On October 19, 2010, the claimant was seen by Louise Resor, M.D., who noted significant right arm/shoulder deficiencies including a reduction in right arm strength to three out of five . . . . Dr. Resor recommended a right shoulder MRI, performed on November 9, 2010, which revealed bursitis and tendinitis . . . . In December 2010, the claimant reported that her back pain was controlled and her right arm problems had started spontaneous[ly] in October 2010 . . . . This is consistent with the record which . . . indicates that the claimant's cervical and lumbar degenerative disc disease was symptomatic but also stable and controlled . . . . The claimant did have right arm symptoms, but it was not until October 2010, when . . . the claimant's arm deficiencies reached disabling level.

(R. 21).

The record supports the ALJ's finding that plaintiff's right shoulder condition became disabling in October 2010 and thus, there was no need for a medical advisor to assist the ALJ in determining plaintiff's disability onset date.

### D. New Evidence

Plaintiff next argues that her due process rights were violated because she was not permitted to confront new evidence submitted after the hearing, upon which the ALJ relied. Plaintiff maintains that there was no mention at the hearing of Exhibit 12F, which was included in the record before this court.[7] Plaintiff did not raise this argument in her complaint.  This court previously has held that where "plaintiff did not raise a colorable constitutional claim that her due process rights were violated in her complaint . . . in which she sought judicial review under 42 U.S.C. § 405(g) of the Appeals Council's dismissal of her case, . . . such a claim is waived."  Rivera v. Colvin, No. 3:11-cv-1788 (JGM), at *20 (D. Conn. July 16, 2013). Plaintiff here did not raise this due process claim in her complaint and thus, she has waived her right to argue it now.

---

[7]Exhibit 12F is described in the index to the record as 111 pages from "Stamford Community Health."  The exhibit contains documents and records including attorney correspondence, orthopedic surgeon records, neurosurgeon records, workers' compensation forms, Stamford Hospital records, some of Dr. Carlesi's records, and state agency non-examining physician Dr. Waldman's 2007 report.

E. <u>Credibility Assessment</u>

Plaintiff lastly argues that the ALJ erred by not providing any reasons for his credibility finding. The ALJ's credibility determination begins with the following boilerplate language found in many ALJ decisions:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible prior to October 1, 2010, to the extent they are inconsistent with the residual functional capacity assessment.

(R. 19.)

Plaintiff contends that the ALJ erred by making only this conclusory boilerplate statement without providing any specific reasons for his credibility assessment. The boilerplate language is permissible here because it does not stand alone. Rather, it is followed by a detailed, six-paragraph explanation of the evidence the ALJ considered when making his credibility finding. See <u>Lumpkin v. Colvin</u>, No. 12-cv-1817(DJS), 2014 WL 4065651, at *10 (D. Conn. Aug. 13, 2014) (notwithstanding use of boilerplate language, ALJ satisfied standard for assessing credibility where he also discussed plaintiff's activities and inconsistent statements). Therefore, there is no error with the ALJ's credibility determination.

III. Conclusion

For these reasons, plaintiff's motion to reverse the decision of the Commissioner (doc. #21) is DENIED and defendant's motion to affirm the decision of the Commissioner (doc. #27) is GRANTED.

This is not a recommended ruling.  The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure.  Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. See 28 U.S.C. § 636(c)(3); Fed.R.Civ.P. 73(c).

SO ORDERED at Hartford, Connecticut this 3rd day of August, 2016.

_____/s/_____
Donna F. Martinez
United States Magistrate Judge